STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                                      SECOND JUDICIAL DISTRICT

---

Gerri M. Rech,                                        Court File No. _____
                                                      Case Type: 7, Employment
                Plaintiff,
                                                      **COMPLAINT**
v.

Alter Trading Corporation,

                Defendant.

---

      Plaintiff Gerri M. Rech ("Plaintiff"), through her attorneys of record, for her Complaint against Defendant Alter Trading Corporation, states and alleges as follows:

## PARTIES

    1.    Gerri M. Rech is an individual resident of the State of Minnesota, County of Ramsey.

    2.    Defendant Alter Trading Corporation ("Alter") is an Iowa corporation, with its Minnesota registered office and its Minnesota principal place of business at 1010 Dale Street N., St. Paul, MN 55117.

    3.    Upon information and belief, Alter is a scrap metal recycling company with numerous locations in the Midwest.

    4.    At all times relevant to this action, Alter was Ms. Rech's employer.

## NATURE OF THE ACTION

    5.    By this civil action, Ms. Rech asserts state law claims of sex discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* ("MHRA"). Ms. Rech also

asserts federal claims of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII").

6. Ms. Rech and Alter are "employee" and "employer," respectively, for purposes of the definitions set forth in the MHRA and Title VII.

## FACTUAL BACKGROUND

7. On October 27, 2008, Plaintiff began her employment with Alter as a scale clerk in its St. Paul facility, located at 801 Barge Channel Road, St. Paul, MN 55107 (the "St. Paul Facility").

8. Although Alter did not provide written performance appraisals, Plaintiff received positive verbal feedback about her performance during the first three years of Plaintiff's employment at Alter from her two previous general managers and she received no warnings, either verbal or written, regarding her performance.

9. However, Plaintiff's direct supervisor, Gary Stevens ("Stevens"), made it clear that he did not want to work with women and he repeatedly made disparaging remarks in Plaintiff's presence about two other female employees that worked at the St. Paul Facility.

10. In 2010, after a female co-worker retired, Stevens stated in Plaintiff's presence that he would not hire another woman and Stevens then tore up an employment application submitted by a woman in front of Plaintiff.

11. Sometime in 2011-2012, a new General Manager, Douglas Reisdorfer ("Reisdorfer") was appointed to the St. Paul Facility.

12. After Shirley Gehrke ("Gehrke"), a female employee of Alter, complained to Alter's Human Resources Department about negative and hostile comments made to her by

2

Stevens, Reisdorfer moved Gehrke to a different entity, a sister company located across the street from the St. Paul Facility.

13. Reisdorfer then began harassing another female Alter employee, Vicky Ford ("Ford").

14. Upon information and belief, Reisdorder constantly accused Ford of not being capable of performing her duties.

15. Upon information and belief, Ford resigned from Alter in the spring of 2013, due to Reisdorfer's harassment.

16. After Ford's resignation, Reisdorfer and Stevens both started accusing Plaintiff, who by then was the only female employee left in her department at Alter, of not completing her work duties.

17. Stevens made offensive and unprofessional comments to Plaintiff, including repeatedly calling Plaintiff a "dumb broad" who did not know how to do her job right.

18. Stevens also repeatedly called Plaintiff a "bitch."

19. Plaintiff made reports to Reisdorfer about Stevens' comments to her.

20. Upon information and belief, Reisdorfer was irritated that Plaintiff had spoken up about Stevens' behavior, but he told Plaintiff that he would speak to Stevens.

21. However, Stevens' verbal abuse and harassment of Plaintiff continued after Reisdorfer told Plaintiff he would talk to Stevens.

22. In the next few months, Plaintiff learned that Stevens was forging Plaintiff's initials on some of his paperwork that contained mistakes, so that Stevens could blame Plaintiff for the mistakes.

23. In the fall of 2014, while Reisdorfer was away from the St. Paul Facility, Plaintiff was at her computer when Stevens came up behind her and said, "I fucking hate you, I wish you would fucking quit." Plaintiff immediately left the office and Stevens then locked Plaintiff out of the office (the "Stevens Incident").

24. Plaintiff left the office to call Reisdorfer on her cell phone to ask him what she should do about the situation (the "Telephone Conversation").

25. During the Telephone Conversation, Reisdorfer told Plaintiff to go home and he also told Plaintiff that he would have to involve Alter's corporate head office.

26. Based on Alter's previous reactions to female employees who reported harassment, Plaintiff believed that she would be punished for the incident rather than Stevens and, therefore, Plaintiff requested that Reisdorfer not contact Alter's corporate head office.

27. Within a week, an individual from Alter's corporate head office (the "Investigator") came to investigate the Stevens Incident (the "Investigation").

28. At the end of the Investigation, Plaintiff met with Reisdorfer and the Investigator, who told Plaintiff that there were no issues with Stevens, but that there were issues with Plaintiff that they wanted to address.

29. The Investigator then proceeded to accuse Plaintiff of break time violations and working too many hours.

30. After the Investigation, Plaintiff was constantly harassed by Reisdorfer and Stevens.

31. In November of 2014, Reisdorfer told Plaintiff that Plaintiff would be written up for untimely submission of shipment photos. Plaintiff had submitted the pictures to the corporate office three days after the photos were taken because she was very busy with other work.

4

Plaintiff had been submitting the photos in this manner for the prior seven years and had never been accused of negligence.

32.  Upon information and belief, employees at other Alter facilities routinely submitted photos three to four days after the pictures were taken during busy times without any issue.

33.  Reisdorfer repeatedly brought Plaintiff into his office, where he would accuse Plaintiff of gossiping with drivers from other companies or talking behind his back.

34.  Reisdorfer also told Plaintiff that she would receive a written warning for being three minutes late; however, the reason Plaintiff did not log in on time was because she was stopped in the warehouse by a customer who had a question and Plaintiff was the only one there to answer the question.

35.  Plaintiff, who suffers from fibromyalgia, found the hostile work environment to be extremely stressful, which caused Plaintiff's fibromyalgia to worsen.

36.  In July 2015, Plaintiff requested a leave of absence because of the stress and the fibromyalgia.

37.  Plaintiff's doctors confirmed Plaintiff medical history and current issues and Plaintiff received 12 weeks of protected leave under the Family Medical Leave Act ("FMLA"), which was exhausted on October 13, 2015.

38.  Plaintiff requested and received additional leave. During that time, Plaintiff received short-term disability benefits.

39.  Plaintiff informed Alter that she planned to return to work towards the end of November 2015.

40. On November 16, 2015, Plaintiff called Alter to confirm the date of her return to work. Instead of confirming the date of her return to work, the Alter representative informed Plaintiff that her position was being eliminated due to a reduction in workforce at the St. Paul facility and that she was terminated effective immediately.

41. On November 17, 2015, Plaintiff received a written termination notice from Alter through FedEx overnight, referencing the telephone conversation of November 16, 2015 (the "Termination Notice".

42. Attached to the Termination Notice was a chart listing the ages and titles of the other individuals who were and were not selected for termination (the "Chart").

43. The Chart indicated that the only individual other than Plaintiff that had been selected for termination was Stevens.

44. However, Stevens had already announced that he planned to retire at the end of December 2015, and he continued to work at Alter after Plaintiff was terminated.

45. Upon information and belief, Alter terminated Plaintiff for reasons based, in whole or in part, on Plaintiff's gender.

## COUNT I
## SEX DISCRIMINATION – HOSTILE WORK ENVIRONMENT
### *MHRA*

46. Plaintiff restates and realleges all preceding paragraphs of the Complaint as if set forth fully herein.

47. Plaintiff is a female and a member of a protected class.

48. While employed by Alter, Plaintiff was subjected to verbal abuse and physical harassment by supervisors when:

    a. submission to that conduct was used as a factor affecting her employment;

6

      b.    the conduct had the purpose or effect of substantially interfering with her employment; and

      c.    the conduct had the purpose or effect of creating an intimidating, hostile, or offensive employment environment.

49.    The foregoing harassment was intentional and based on Plaintiff's gender.

50.    The foregoing harassment affected a term, condition or privilege of Plaintiff's employment with Alter.

51.    Alter knew or should have known of the harassment and failed to take proper remedial action.

52.    The harassment endured by Plaintiff while employed by Alter caused Plaintiff emotional distress and psychological harm.

53.    As a result of these acts of discrimination by Defendants, Plaintiff has been harmed and has lost salary, has suffered tangible job detriment, and has suffered and will continue to suffer emotional pain and anguish, and is entitled to compensatory damages, attorneys' fees and punitive damages in an amount in excess of $50,000.

## COUNT II
## SEX DISCRIMINATION – WRONGFUL DISCHARGE
### *MHRA*

54.    Plaintiff restates and realleges all preceding paragraphs of the Complaint as if set forth fully herein.

55.    Plaintiff is female and was a member of a protected class at the time of her termination from employment with Alter on November 16, 2015.

56.    Plaintiff was meeting or exceeding reasonable employment expectations at the time of her termination.

57. Plaintiff has additional evidence that gender was a factor in her termination, based on the following: (a) Plaintiff's duties were transferred to a male; (b) Plaintiff experienced numerous and demeaning instances of abuse based on her gender, and (c) Plaintiff was terminated while receiving short-term disability benefits related to a medical leave. Plaintiff required the medical leave to deal with stress and worsening fibromyalgia, caused by the harassment she was subjected to from Stevens and Reisdorfer, based on her gender and based on retaliation for her attempts to report the harassment. Moreover, although Alter tried to cover up the real reason for her termination by claiming that this was a reduction in workforce, the only other individual who was affected by this supposed reduction in workforce was Stevens, who had already been slated for retirement at the end of December 2015.

58. Alter's termination of Plaintiff's employment was sex discrimination within the meaning of Minn. Stat. § 363A.01 et seq., and Alter's actions, therefore, constituted an unfair employment practice against Plaintiff in violation of the MHRA.

59. As a result of these acts of discrimination by Alter, Plaintiff has been harmed and has lost salary, has been denied employment opportunities, benefits and advancement, and has suffered and will continue to suffer emotional pain and anguish, and compensatory damages in an amount in excess of $50,000.

## COUNT III
## SEX DISCRIMINATION – WRONGFUL DISCHARGE
### *TITLE VII*

60. Plaintiff restates and realleges all preceding paragraphs of the Complaint as if set forth fully herein.

61. Plaintiff is a female and was a member of a protected class at the time of her termination from employment with Alter on November 16, 2015.

62. Plaintiff was meeting or exceeding reasonable employment expectations at the time of her termination.

63. Plaintiff has additional evidence that sex was a factor in her termination, based on the following: (a) Plaintiff's duties were transferred to a male; (b) Plaintiff experienced numerous and demeaning instances of abuse based on her gender, and (c) Plaintiff was terminated while receiving short-term disability benefits related to a medical leave. Plaintiff required the medical leave to deal with stress and worsening fibromyalgia, caused by the harassment she was subjected to from Stevens and Reisdorfer, based on her gender and based on retaliation for her attempts to report the harassment. Moreover, although Alter tried to cover up the real reason for her termination by claiming that this was a reduction in workforce, the only other individual who was affected by this supposed reduction in workforce was Stevens, who had already been slated for retirement at the end of December 2015.

64. Alter terminated Plaintiff's employment based on an improper purpose, specifically, Plaintiff's gender.

65. Alter's termination of Plaintiff's employment with Alter was discrimination on the basis of gender within the meaning of 42 U.S.C. § 2000e et seq., and Alter's actions, therefore, constituted an unfair and discriminatory employment practice against Plaintiff in violation of Ms. Rech's rights and Title VII.

66. As a result of these acts of discrimination by Alter, Plaintiff has been harmed and has lost salary, has been denied employment opportunities, benefits and advancement, and has suffered and will continue to suffer emotional pain and anguish, and compensatory damages in an amount in excess of $50,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a jury trial on all issues triable to a jury and respectfully prays for entry of judgment and an ordering providing as follows:

1. That the conduct of Alter complained of herein are adjudged, decreed and declared to violate the rights secured to Plaintiff by the MHRA and Title VII;

2. That Alter is mandated to adopt practices in conformity with the requirements of the MHRA and Title VII;

3. That Alter is permanently enjoined and prohibited from engaging in the practices complained of herein;

4. That Plaintiff is awarded compensatory damages and other allowable damages in an amount to be established at trial in excess of $50,000.00;

5. That Plaintiff is awarded her costs, disbursements, and attorney's fees as allowed by law; and

6. That Plaintiff is awarded such other and further relief as is just and equitable under the circumstances.

Dated: 5/30/17

DOUGHERTY, MOLENDA, SOLFEST,
HILLS & BAUER P.A.

By: /s/ Matthew Schaap
Matthew J. Schaap, I.D. 323421
mschaap@dmshb.com
Robert B. Bauer, I.D. 227365
rbauer@dmshb.com
14985 Glazier Avenue, Suite 525
Apple Valley, Minnesota 55124
P: (952) 953-8816
F: (952) 432-3780

**Attorney for Plaintiff**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that, under Minn. Stat. § 549.211, subd. 3, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party in this litigation for violations of Minn. Stat. § 549.211.

DOUGHERTY, MOLENDA, SOLFEST,
HILLS & BAUER P.A.

Dated: 5/30/17

Matthew J. Schaap, I.D. 323421