UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gerri M. Rech,  Civ. No. 17-2117 (PAM/KMM)

Plaintiff,

v.  **MEMORANDUM AND ORDER**

Alter Trading Corporation,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Gerri Rech worked at Defendant Alter Trading Company as a scale clerk from October 2008 until November 2015. (Ives Aff. (Docket No. 29) Ex. D-2 (Rech Dep.) at 40.) Alter is a scrap metal company headquartered in Missouri; Rech worked at Alter's facility in St. Paul. (O'Leary Aff. (Docket No. 26) ¶ 5.) She claims that she was repeatedly harassed by both her immediate supervisor and the facility's general manager and that the harassment forced her to take a medical leave. She was ultimately terminated and did not ever return to work. Alter contends that her termination was part of a reduction in force after a sharp downturn in the scrap metal industry, and that Rech was chosen for termination because of her poor performance and because she was in an unprotected leave status, not because she is a woman.

Rech was one of the only women employed at Alter's St. Paul facility. She worked at the front desk, weighing scrap cargo and paying customers for the scrap.

(Rech Dep. at 42; LaSee Aff. (Docket No. 28) Ex. C-2 (description of scale clerk's duties).) In 2013, the facility's general manager left his position, and Doug Reisdorfer became general manager. According to Rech, at about the same time, her immediate supervisor, Gary Stevens, began harassing her, calling her a "dumb broad" and making other insulting comments in front of other workers and customers. (Rech Dep. 50-51.) Rech also claims that Stevens ripped up the applications of females applying for open position following another female employee's retirement. Stevens told Rech that he did not want to work with women and that Alter would not hire another woman for 40 years. (Id. at 51, 71.) She asserts that a prior female clerk filed a complaint against Stevens, and Stevens told Rech that the "b*tch tried to get me fired" but that he was "sneaky" and "got away with it." (Id. at 66, 69.) Rech alleges that Stevens showed her a copy of the complaint (id. at 67-68), but Alter has no record of any complaint being filed against Stevens by any other employee. (LaSee Aff. ¶ 13.)

In August 2014, Rech contends that Stevens yelled at her, telling her that he "f-ing hate[d]" her and that he wished she would "f-ing quit." (Rech Dep. 64-66.) Rech became so upset that she walked out to the loading dock to call Reisdorfer. (Id.) While she was on the phone with Reisdorfer, Stevens allegedly locked the door behind her so that she could not return to her office. (Id.) Reisdorfer reported the incident to Alter's Human Resources department.

Alter's HR investigated the incident and conducted interviews with Rech, Stevens, and other employees at the St. Paul facility. (LaSee Aff. ¶ 11.) Alter ultimately determined that Rech's allegations were not substantiated and that, instead, Rech herself

had committed violations of company policy by taking excessively long breaks and talking to other employees and to customers about her co-workers. (Id. Ex. C-4.) Alter's HR staff also counseled Stevens to improve his relationship with Rech. (Id.)

Thereafter, Rech contends that Reisdorfer started papering her personnel file with either incorrect or overblown violations of company policy. According to Rech, before she reported Stevens's behavior, she had never had a negative performance report. After she complained about Stevens, however, she received multiple negative reports. In December 2014, Alter's HR followed up with Rech about the situation with Stevens. She reported that things were much better and that she was "happy with Gary." (LaSee Aff. Ex. C-5.) Rech alleges that Stevens resumed his verbal harassment shortly thereafter but she did not want to report it because of the retaliation she had experienced. (Rech Dep. at 81.)

In July 2015, Rech took a medical leave of absence. (Id. at 122.) She received FMLA leave from Alter and short-term disability insurance payments from Alter's disability insurance carrier. (Id. at 123.) Alter contends that Rech stopped providing medical information to Alter and the insurer in August, despite multiple requests that she provide updated information. (LaSee Aff. ¶ 36.) Rech asserts that she asked her doctor to send medical information to Alter but that he apparently did not comply. (Rech Dep. at 126.) Her leave expired in mid-October (id. at 135), and although Alter contacted her several times to ascertain when she planned to return to work, she did not respond. (Id. at 136.)

3

Meanwhile, Alter claims that it was planning a company-wide reduction in force ("RIF"), and Rech was selected for termination. Alter attributes Rech's selection to her negative performance reviews, her failure to communicate when she planned to return to work, and her failure to return to work despite exhausting FMLA leave. (Reisdorfer Aff. (Docket No. 27) ¶ 22.) Rech was the only female of the 11 employees in the Northern Lakes Region[1] selected for the RIF. (O'Leary Aff. ¶ 13.) Stevens was also selected for the RIF, although he had previously decided to retire in December 2015, only a month after the RIF. (Reisdorfer Aff. ¶ 21.) Another male employee at the St. Paul facility was also included in the RIF, but he died before the RIF took effect. (Id. ¶ 20.) Alter contends that it laid off employees nationwide, but it does not specify the percentage of its workforce included in the RIF.

Alter asserts that it did not re-fill Rech's position until May 2017, when it hired a female to fill the position. Rech testified in her deposition that she did not know whether she was replaced or who replaced her. (Rech. Dep. at 180.)

Rech filed a charge of discrimination with the Minnesota Department of Human Rights on March 7, 2016. The charge raises both harassment and reprisal on the basis of sex. Rech elected to file suit rather than proceed with the MDHR charge, Minn. Stat. § 363A.33, and commenced this lawsuit in state court on May 30, 2017. Alter timely removed the case to federal court. Count I of Rech's Complaint claims hostile work environment in violation of the Minnesota Human Rights Act, Count II is a claim for

---

[1] Alter has four facilities in the Northern Lakes Region: three in Minnesota and one in Eau Claire, Wisconsin. (O'Leary Aff. ¶ 6.)

wrongful discharge under the MHRA, and Count III raises a wrongful-discharge claim under Title VII.

Alter seeks summary judgment on all counts. It contends first that Rech's hostile-work-environment claim is untimely because the events on which that claim is based happened in 2014, well beyond the MHRA's one-year statute of limitations. Alter also argues that Rech has failed to make out a prima facie case of hostile work environment because the harassment of which she complains was not severe and pervasive enough to alter the terms and conditions of her employment. Finally, Alter argues that Rech's wrongful-discharge claims fail because she has no evidence, direct or indirect, of a discriminatory motive with respect to her termination, and that, regardless, Alter's stated reasons for her termination were not pretextual.

In response to Alter's Motion, Rech filed a declaration that differs in material respects from her deposition testimony. (Rech Decl. (Docket No. 31).) As only one example, she testified in her deposition that she did not know who replaced her after she was terminated (Rech Dep. 180), but her declaration contends that she was replaced by a male co-worker. (Rech Decl. ¶ 148.) Rech attempts to excuse these inconsistencies, claiming that Alter failed to include the complete transcript of her deposition in its submissions and that the missing pages would have "clarified or explained" many of the topics addressed in her declaration. (Id. ¶ 152.) According to Rech, she cannot afford to purchase the deposition transcript to supply that clarification and explanation to the Court. (Id.)

But in the absence of confusion or mistake regarding earlier deposition testimony, a party cannot create issues of fact in opposition to a summary-judgment motion by submitting late-filed affidavit that contradicts that testimony. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995). Although the Court is sympathetic to the costs of litigation, Rech chose to bring this lawsuit and she cannot avoid her obligation to establish her claims by pleading an inability to order a deposition transcript. To the extent that Rech's declaration contradicts her sworn testimony, the Court has disregarded the declaration.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### A. Harassment

#### 1. Statute of Limitations

Minnesota law provides for a one-year statute of limitations for claims alleging discrimination in violation of the MHRA. Minn. Stat. § 363A.28, subd. 3. Alter contends that the last incident of alleged harassment against Rech occurred in August 2014, two and a half years before she filed this lawsuit. But Rech also alleged that Reisdorfer harassed her by bringing numerous pretextual performance reports against her after the August 2014 incident. Rech also testified that Stevens did not stop harassing her after she reported him in 2014, but that the harassment continued until she took medical leave. Summary judgment on the basis of the statute of limitations is not warranted.

#### 2. Prima Facie Case

> To prevail on a hostile work environment claim, a plaintiff must prove the following five elements: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome sexual harassment; (3) that a causal nexus existed between the harassment and protected group status; (4) that harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

Hales v. Casey's Mktg. Co., 886 F.3d 730, 735 (8th Cir. 2018) (citing Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999)). "[T]he conduct must be sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of the victim's employment." Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111 (8th Cir. 1997).

Even viewing the evidence in the light most favorable to Rech, she has not established that the harassment she alleges was sufficiently severe and pervasive to alter

the terms and conditions of her employment. To be actionably severe, the harassment must objectively create a hostile work environment. Courts must examine all the facts and circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The "severe and pervasive" threshold is a high one, requiring a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." Id. at 21 (quotation omitted). Rech must prove that the conduct was "extreme in nature and not merely rude or unpleasant." Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 846 (8th Cir. 2006).

Rech has not met her burden. Although Rech apparently found the conduct subjectively severe—she contends that it forced her to take medical leave—her subjective beliefs do not control. See Alagna v. Smithville R-II School Dist., 324 F.3d 975, 980 (8th Cir. 2003) (finding that a co-worker telling plaintiff that he loved her, touching her, and acting inappropriately for two years was not sufficiently severe and pervasive for hostile-work-environment claim); Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002) (finding that multiple sexual advances and repeated sexually explicit behavior and comments by plaintiff's supervisor over a period of more than three years was not sufficiently severe and pervasive). Given the high standard discussed above, Rech's harassment claim fails.

**B.     Discrimination**

Rech's employment-discrimination claims, whether under Title VII or the MHRA, are analyzed using the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 542 (Minn. 2001) (applying McDonnell Douglas analysis to MHRA claims). Under that analysis, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Specifically, in this case Rech must establish that: (1) she is a member of a protected group, (2) she was meeting Alter's legitimate employment expectations, (3) she suffered an adverse employment action, and (4) Rech was treated differently from similarly situated males. Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). In a RIF case such as this, Rech "must make some additional showing that gender was a factor in her termination." Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 631 (8th Cir. 2005).

If Rech establishes a prima facie case of discrimination, Alter must rebut that showing by presenting evidence of a legitimate, non-discriminatory reason for the adverse action. Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998). If Alter presents such evidence, Rech must then prove that the reasons offered by Alter are pretextual and that illegal discrimination was a motivating reason for Alter's actions. Id.

Alter first argues that Rech has failed to establish elements 2 and 4 of her prima facie case and that she has offered no additional showing that her gender motivated her termination. Alter contends that Rech was not meeting its legitimate employment

9

expectations both because of her negative performance reports and the fact that she failed to keep Alter apprised of her ability to return to work after her FMLA leave expired. And it points out that she was the only female employee to be terminated in the RIF in the region.[2]

Even accepting Rech's assertion that her negative performance reports were in retaliation for her report of harassment, her failure to provide Alter with any indication of when she might be able to return to work after her medical leave means that she was not meeting Alter's legitimate employment expectations. And Alter is correct that there is no evidence in the record to support Rech's burden of an "additional showing" that gender was a factor in her termination, much less that Alter's expressed reason for her termination is a mere pretext for discrimination on the basis of gender. Rech has failed to raise a genuine issue of material fact as to her prima facie case, and her wrongful-discharge claims fail.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment (Docket No. 23) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 25, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

---

[2] Alter did not, however, present any evidence regarding how many individuals are employed in the Northern Lakes Region and what percentage of its employees are female.